## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.B. and C.B., on behalf of the minor child, D.B., | : | **CIVIL ACTION** |
| | : | |
| | : | **No. _____** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **TREDYFFRIN/EASTTOWN SCHOOL DISTRICT** | : | |
| **940 West Valley Road** | : | |
| **Suite 1700** | : | |
| **Wayne, PA 19087** | : | |
| | : | |
| **and** | : | |
| | : | |
| **AMY A. MEISINGER** | : | |
| **200 Irish Road** | : | |
| **Berwyn, PA 19312** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

Plaintiffs A.B. and C.B., on behalf of the minor Plaintiff, D.B., bring this action against Defendants Tredyffrin/Easttown School District and Amy A. Meisinger, and demand damages based upon the causes of action set forth below. In support of her Complaint, Plaintiff D.B. avers as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs A.B. and C.B., on behalf of the minor Plaintiff, D.B. ("Plaintiff"), bring this action against Defendants Tredyffrin/Easttown School District ("Tredyffrin/Easttown" or the "School District") and Amy A. Meisinger, Principal of Conestoga High School ("Principal Meisinger") pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972,

1

20 U.S.C. § 1681 ("Title IX'), to redress permanent, life-altering injuries she suffered as a result of violations of her right to be free from sexual harassment, sexual assault and a hostile educational environment based upon her gender.

2.      Because of the nature of these allegations, and Plaintiff's legitimate need for and right of privacy, Plaintiff files this Complaint without the appearance of her actual identity or her parents' identity in the caption.  The initials D.B. are utilized to protect the privacy of the Plaintiff, a victim of sexual harassment, molestation, sexual assault and rape.

3.      At the time the sexual assaults occurred, Plaintiff was a minor female attending Conestoga High School in Chester County, Pennsylvania.

4.      Plaintiff was persistently groomed, stalked and then sexually assaulted and raped by Arthur E. Phillips ("Phillips"), an instructional aide at Conestoga High School.

5.      Tredyffrin/Easttown and Principal Meisinger had knowledge of a parade of improper conduct by Phillips.  His open and notorious behavior towards Plaintiff was known by school administrators, teachers and students, yet Tredyffrin/Easttown and Principal Meisinger did nothing to stop it.  As a result, Phillips was emboldened to continue his predatory behavior and eventual assault of Plaintiff.

6.      Defendants' indifference to Phillips' behavior, and their failure to remove Phillips and to enforce and/or create policies to prevent sexual assault, fostered an environment whereby Phillips could sexually harass and assault Plaintiff.

7.      Phillips demanded that Plaintiff keep the facts and circumstances of the ongoing sexual abuse a secret, while manipulating Plaintiff into continuing the inappropriate relationship, which eventually culminated in Phillips' sexual assault and rape of Plaintiff.

2

8.      On April 21, 2017, Phillips was arrested and criminally charged in connection with his unlawful sexual abuse of Plaintiff.

9.      On May 12, 2017, the District Attorney of Chester County filed a number of additional criminal charges against Phillips, including 21 new first-degree felonies.

## PARTIES

10.      Plaintiff D.B. is a minor child, and a citizen and resident of Chester County in the Commonwealth of Pennsylvania.

11.      A.B and C.B. are adult individuals and the natural parents and legal guardians of the minor Plaintiff D.B. A.B and C.B. are citizens and residents of the Commonwealth of Pennsylvania

12.      Defendant Tredyffrin/Easttown School District is a local government agency established and organized under the laws of the Commonwealth of Pennsylvania and a recipient of federal financial assistance. Tredyffrin/Easttown is a school district organized pursuant to the Public School Code of 1949, Act of March 10, 1949 P.L. 30, as amended, 24 P.S. §1-101 *et seq.* Tredyffrin-Easttown maintains an office at 940 West Valley Road, Suite 1700, Wayne, PA 19807.

13.      Conestoga High School ("Conestoga") is a public high school in the Tredyffrin/Easttown School District. Conestoga High School is located at 200 Irish Road, Berwyn, PA 19312. Tredyffrin/Easttown manages Conestoga High School and is responsible for the daily operations of Conestoga High School.

14.      Defendant Amy A. Meisinger, Ph.D. ("Principal Meisinger") is a citizen of the Commonwealth of Pennsylvania, who was at all material times the Principal of Conestoga High

3

School.

15.     At all times relevant hereto, Principal Meisinger was acting in individually and under color of her authority in her office as the Principal of Conestoga High School.

16.     Tredyffrin/Easttown and Conestoga High School have fostered, facilitated and/or turned a "blind eye" to an ongoing, widespread and pervasive culture of inappropriate sexual behavior that eventually culminated in sexual assault and rape.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, which provides federal district courts with jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States.

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1343(a)(3) and (4) which provides federal district courts with jurisdiction over any civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

19.     Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983.

20.     Venue lies properly in this judicial district, as Defendants and Conestoga High School are located herein at the above-captioned addresses, and because the acts and failures to act giving rise to the Complaint occurred therein.

21.     Venue in this Court is invoked pursuant to 28 U.S.C. § 1331.

## FACTUAL BACKGROUND

22.     At the beginning of the 2016-2017 school year, Plaintiff D.B. was 15 years of age and a tenth-grade student at Conestoga High School.

4

23.    At all relevant times herein, Plaintiff was under the complete control and supervision of the Tredyffrin/Easttown School District, Conestoga High School and the School District's administrators, teachers and other employees, including, but not limited to, Principal Meisinger.

24.    Arthur E. Phillips was an instructional aide at Conestoga High School.

25.    Phillips worked in Conestoga's TV production studio and has been employed by the Tredyffrin/Easttown School District since 2006.

26.    At all relevant times herein, Phillips was an aide at Conestoga High School, acting as an employee, agent, and/or servant of the Tredyffrin/Easttown School District and/or was under the School District's complete control and supervision.

27.    Tredyffrin/Easttown and Conestoga High School held Phillips out to the public, Plaintiff and Plaintiff's family to be of high ethical and moral repute, and to be in good standing with the Tredyffrin/Easttown School District, Conestoga High School, and the Commonwealth of Pennsylvania.

28.    Through his positon with Conestoga High School and the Tredyffrin/Easttown School District, Phillips was provided direct contact with minor students, including Plaintiff.

29.    By the time Plaintiff reached the tenth grade during the 2016-17 school year, Defendant Tredyffrin/Easttown had already developed a policy or practice of deliberate indifference to gender-based harassment and discrimination, as evidenced by at least three prior criminal episodes in the past 24 months.

30.    Beginning around January 2017, when Plaintiff was 15 years old, and legally and emotionally incapable of giving consent, Phillips initiated improper and indecent conduct,

including several instances of sexual assault, of the minor Plaintiff.   Over time, Phillips molested and abused Plaintiff D.B., including improper touching, kissing, fondling and digital penetration, without Plaintiff's free consent.

31.     These acts of sexual assault took place in various locations at Conestoga High School, including the school's TV studio, Phillips' office, Conestoga's parking lot and in Phillips' automobile.

32.     Phillips accelerated his improper and indecent conduct, and in April 2017, raped Plaintiff.

33.     Phillips exploited his authority and position as a teacher's aide, and forced Plaintiff into sexual intercourse on at least five occasions in April 2017. These assaults took place in the buildings or on the grounds of Conestoga High School, where Plaintiff was a tenth-grade student.  Other assaults occurred in Phillips' automobile.  Upon information and belief, the majority of Phillips' assaults occurred during the course of school hours.

34.     In Fall 2016, when he first began to draw Plaintiff into a relationship, Phillips permitted Plaintiff, who, at the time, was 15 years old, to drive his automobile, a Dodge Challenger, on School District property and onto Old State Road near Conestoga High School.

35.     At that time, Plaintiff did not have a driver's license or even a learner's permit allowing her to drive in Pennsylvania.

36.     At least two other Conestoga High School students were in the car with Phillips and Plaintiff, all within sight of external school cameras.

37.     Phillips often stalked Plaintiff through the corridors at Conestoga High School, and would peer into her classrooms while Plaintiff was in class.

38.     If Plaintiff was not in class for some reason (and not with Phillips), he would email or text Plaintiff and ask where she was or why she was not in class, evidence that he was constantly watching her.

39.     On one occasion, Phillips grabbed Plaintiff in a corridor, pulled her into an empty classroom, and closed the door behind them.  Upon information and belief, this act was witnessed by administrators, teachers and students.

40.     Phillips repeatedly made romantic and sexual comments to Plaintiff.

41.     Phillips often discussed sexual issues with Plaintiff, including discussions relating to his penis.

42.     Phillips and Plaintiff would often communicate by text messaging. On at least two occasions, Phillips sent Plaintiff a photograph of his penis via a text message.

43.     Phillips would persistently urge Plaintiff to spend time with him in his office rather than attending class; Phillips facilitated this practice by writing hall passes for her.

44.     On multiple occasions, while they were alone in Phillips' office, Phillips would kiss, fondle and grope Plaintiff, and touch Plaintiff's breasts, vaginal area and buttocks.  Phillips also exposed his penis to Plaintiff and tried to insert his penis into Plaintiff, causing Plaintiff pain.

45.     On multiple occasions, Phillips digitally penetrated Plaintiff, stating that he wanted to prepare Plaintiff for sexual intercourse. On multiple occasions, Phillips performed oral sex on Plaintiff.

46.     The sexual assaults described above occurred numerous times before Plaintiff's sixteenth birthday and continued after her birthday.

47.     Many of the sexual assaults described above occurred at Conestoga High School, including in Philips' office and in the TV studios.

48.     Plaintiff continuously said no and tried to reject Phillips' advances.  However, Phillips threatened Plaintiff and told her that no one would believe her.  Phillips told Plaintiff that Principal Meisinger "thinks I [Phillips] am a saint" and that no would believe Plaintiff.

49.     On multiple occasions, during the school day, Phillips took Plaintiff from the Conestoga High School campus and off School District property to treat her to meals and continue to groom Plaintiff while gaining her trust and fostering secrecy.

50.     Phillips took Plaintiff to Berwyn Pizza (Berwyn, PA) for lunch and to Handel's Homemade Ice Cream & Yogurt (Berwyn, PA) for ice cream, during and after the school day.

51.     Phillips also took Plaintiff to several restaurants for meals, including Estia (Radnor, PA), Christopher's (Wayne, PA) and City Works Eatery and Pour House (King of Prussia, PA), during and after the school day.

52.     Phillips also took Plaintiff to several Wawa convenience stores in the area, including stores in Audubon, King of Prussia, Malvern, Norristown and Paoli, during and after the school day.

53.     Phillips also took Plaintiff on shopping trips to King of Prussia Mall, a Home Depot store in Norristown, Pennsylvania and along Lancaster Avenue in Berwyn.

54.     Upon information and belief, Phillips took Plaintiff to the iFly Indoor Skydiving Center in King of Prussia, Pennsylvania and to the Valley Forge Casino.

55.     Phillips took Plaintiff to Philadelphia, where they visited Sweet Charlie's, which is an ice cream shop on Walnut Street in Center City Philadelphia.  Phillips also took Plaintiff ice-

skating at Dilworth Park in Center City Philadelphia. Upon information and belief, these two trips occurred during the school day or immediately after the school day, and Phillips and Plaintiff left from Conestoga High School. Phillips also took Plaintiff with him to a garage in Philadelphia where he sold and purchased a car.

56.    Phillips also purchased numerous items for Plaintiff, including gift cards; a "Vape pen", which Plaintiff neither requested nor wanted; and a ring.

57.    On several occasions, Piera Raffaele, a Visual/Performing Arts teacher at Conestoga High School, accompanied Phillips and Plaintiff to restaurants immediately after the school day. Mrs. Raffaele was also aware that Phillips was taking Plaintiff from Conestoga High School during the school day. On several occasions, Mrs. Raffaele asked Phillips and Plaintiff to bring a sandwich or another food item back to her when Phillips and Plaintiff would leave together.

58.    In fact, on or around Plaintiff's birthday in early March 2017, Ms. Raffaele and Ms. Raffaele's husband went to dinner on a "double date" with Plaintiff and Phillips for Plaintiff's birthday. The group went to Paladar Latin Kitchen and Rum Bar in King of Prussia.

59.    During that "double date", Ms. Raffaele was aware that Plaintiff was a student at Conestoga High School and that Phillips was an aide at Conestoga High School.

60.    Mrs. Raffaele also observed Phillips' in-school behavior towards Plaintiff, including Plaintiff's numerous unsupervised visits to Phillips' office.

61.    Mrs. Raffaele told Plaintiff that "there was always one like you before", in reference to a relationship between Phillips and a student.

62.    Mrs. Raffaele failed to take any action regarding Phillips' inappropriate behavior towards Plaintiff even though she witnessed Phillips' inappropriate behavior.

63.     Other Conestoga High School students, including an 11th grade female student, and a 12th grade male student, sometimes accompanied Phillips and Plaintiff off school grounds.  Upon information and belief, Phillips was gaining Plaintiff's confidence by socializing with a group of children, and then coercing her to be alone with him.

64.     Besides Ms. Raffaele, several other Conestoga High School teachers and staff, including Alex Azar (TV studio aide (the same position as Phillips)), Joan Wagner (Visual/Performing Arts teacher), Caitlin Wilson (Language and Composition teacher) and Susan Houseman (Business/Technology teacher), knew that Phillips was taking Plaintiff, and other minor students, off Conestoga property during the school day.

65.     Phillips and Mr. Azar worked in offices adjacent to the TV studio in Conestoga's building.  The TV studio is described by Conestoga High School as the "home of scholastic broadcasting and video production."

66.     During his more than 10 years of employment at Conestoga High School, Phillips established a network of students who regularly visited the TV studio to eat lunch with him. Moreover, Phillips would often purchase soft pretzels, cake and candy on his own, and bring the treats into Conestoga High School for the children.

67.     Students who attended these lunches hosted by Phillips called the days "Cake Wednesdays." Phillips created these "Cake Wednesdays" as a way to befriend his students, including Plaintiff, in the privacy of his office or the TV studio.

68.     The students who ate lunch with Phillips in the TV studio were alone with Phillips and otherwise unsupervised by any other adult individual.

69.     Numerous Conestoga High School teachers knew that Phillips hosted "Cake Wednesdays" for students.

70.     Phillips would often eat lunch with Plaintiff in his office or the TV studio without any other student or employee present, although multiple teachers, staff and students knew they were eating together.

71.     Conestoga's internal policy states that "Students must report for lunch during the period indicated on their schedules. They may eat lunch in the cafeteria or courtyard. . . .. Students must remain in the designated lunch areas (cafeteria and courtyard) during their lunch period." The policy also states that "[p]er teacher discretion, food and drink may be enjoyed in the classroom." Phillips was not a teacher, nor was his office or the TV studio a classroom.

72.     In addition, Phillips purchased and kept a bag of Plaintiff's favorite candy in his office.

73.     Phillips also forced Plaintiff to accompany him to a location along the Schuylkill River near Betzwood, Montgomery County, where Phillips maintains a boat with a number of his friends.   Upon information and belief, this occurred during the school day or immediately after the school day, and Phillips and Plaintiff left from Conestoga High School.

74.     Upon information and belief, Phillips hosted parties on his boat for Conestoga students who took classes or were involved in activities related to the TV studio.

75.     Phillips' grooming of Plaintiff began in October 2016 and culminated in rape in April 2017.

76.     Upon information and belief, many of Phillips' contacts with Plaintiff are documented on Conestoga's video monitoring system, including those cameras used to observe school entrances and exits and around the bus drop-off/pickup location.

77.     Upon information and belief, there are multiple cameras directed towards one of the entry/exit points of Conestoga High School regularly used (Old State Road "bus circle" exit) by Phillips and Plaintiff because it was located near the TV studio.

78.     Defendants' failure to review the camera footage and failure to intervene in the outwardly inappropriate and illegal behavior of its employee and agent, Phillips, constitutes a systematic violation of School District policies.

79.     Moreover, Phillips continually wrote and provided Plaintiff "hall passes" permitting Plaintiff to miss, or be tardy for, class in order to permit her to spend time alone with Phillips.

80.     None of the teachers who received these "hall passes" filled out by Phillips took any action to investigate, manage, question or stop said absences or tardiness.  Some of those teachers include, but are not limited to: Suzanne Dickinger (Director of Choral Activities and Visual/Performing Arts teacher), Cynthia Hyatt (Theater Arts teacher), Seth Shore (Mathematics teacher), Mary Elizabeth Talian (English teacher), Sarah Taylor (Spanish teacher) and Joanne Wagner (Visual/Performing Arts teacher).

81.     In addition, when Plaintiff had substitute teachers, Phillips would take advantage of that situation and call the substitute teacher and ask him or her to release Plaintiff from class.

82.     Only two teachers – Ms. Dickinger and Ms. Wagner – informed Phillips that he was not permitted to write and/or utilize "hall passes" for Plaintiff because he was an aide, not a

12

teacher.  Upon information and belief, Ms. Dickinger communicated this to Phillips via electronic mail, using the School District's email system, and Ms. Wilson communicated this verbally. Phillips informed Plaintiff that these teachers had told him to cease issuing hall passes for Plaintiff.

83.     Both Ms. Dickinger and Ms. Wagner knew that Phillips' misuse of "hall passes" for Plaintiff was improper.

84.     Although Ms. Dickinger and Ms. Wagner knew that Phillips' use of "hall passes" for Plaintiff was improper, neither of them alerted the administration of the continuous improper behavior.

85.     Further, although the other teachers identified also knew, or should have known, that Phillips' manipulation of "hall passes" for Plaintiff's use was improper, these teachers also failed to challenge Phillips about his conduct.

86.     These agents and/or employees of the School District, as well as still unidentified administrators and teachers, were aware that Phillips was meeting with Plaintiff in his office and taking her off the school grounds for meals.

87.     In addition to the above carelessness and outrageous disregard of proper monitoring of students by Conestoga's teachers, there were additional administrative failures in recognizing a seemingly obvious problem with Plaintiff.

88.     For example, from January 2017 through mid-April 2017, Plaintiff missed approximately twenty (20) English classes.  Nevertheless, her English teacher, Ms. Talian, never discussed this issue with Plaintiff's parents.

89.     In fact, on several occasions, starting in mid-March 2017, Plaintiff approached Ms. Talian, and either told the teacher that something was wrong or refused to explain numerous late

assignments. Ms. Talian's response was a perfunctory "OK" but there was no further inquiry, conversation and/or referral to any other office.

90.     Ms. Talian ignored the fact that Plaintiff turned in several assignments late, with no excuse. Despite what should have been clear, Ms. Talian, a teacher, did not probe further.

91.     Ms. Talian is the moderator of the SADD (Students Against Destructive Decisions)/TATU (Teens Against Tobacco Use) student organizations at Conestoga High School. SADD/TATU was established to address issues of underage drinking, impaired driving, drug use, tobacco use and other destructive decisions and killers of young people. SADD/TATU's mission is to provide students with the best prevention and intervention tools possible to deal with the serious issues facing teens today.

92.     Despite being the sponsor of an interventional student organization, Ms. Talian failed to report Plaintiff's chronic absence from her English class, repeated late assignments and/or seemingly obvious pleas for help.

93.     Additionally, Ms. Talian was one of many teachers who received repeated hall passes written by Phillips excusing Plaintiff from class.

94.     None of the teachers identified above, or any teacher for that matter, reported that Plaintiff was frequently skipping classes.

95.     Conestoga's Student Handbook states that:

> Regular attendance is essential to academic excellence. Absences from class interfere with the continuity of learning for both the absent student and others in the class. . . .. Unexcused absences from classes (class cuts) interrupt the continuity of learning and can have a direct negative effect on a student's grade. A class cut is defined as an unexcused absence from **all** *or* **part** of a scheduled class or class activity. . . .. A student who cuts a class will be assigned two sessions of Evening Supervised Study and will receive a 10% point grade reduction for the marking period because of academic work

14

missed. The next cut in the same class in the same marking period will result in the assignment of two additional sessions of Evening Supervised Study and, because of academic instruction missed, <u>either a maximum grade of 50% for the marking period or the achieved grade, whichever is lower</u>. Further class cuts in any subject will result in a parent conference, the assignment of four sessions of Evening Supervised Study and the implementation of the described grade reduction policy.  [bold in original; underlining added].

96.     Despite this policy, not one teacher reduced Plaintiff's grade, contacted her parents for a conference or followed up on the reasons for the numerous absences.

97.     Phillips used Tredyffrin/Easttown's email system to contact Plaintiff.  Phillips sent Plaintiff an email from his School District account in which he combined one of Plaintiff's phone texts to him with sexual content created by Phillips. Phillips also used his personal email to contact Plaintiff.

98.     Phillips often told Plaintiff to "be diligent" about deleting any and all emails and text messages from him.

99.     Phillips also induced Plaintiff to enroll in "Beginners TV" and "Intermediate TV" for the 2017-18 school year.  Phillips told Plaintiff it would be easier for them to be together if she was in classes near the TV studio and his office.

100.     Phillips decorated his office with homemade decorations and signs that included Plaintiff's initials, as well as her first name.  Many of the decorations and signs also included the word "love".

101.     Multiple a g e n t s  a n d / o r  employees of Conestoga High School and Tredyffrin/Easttown had both actual and constructive notice of the excessive closed door meetings between Phillips and Plaintiff.  Indeed, because of the close proximity of their offices to Phillips' office, certain teachers were able to see Plaintiff enter and exit Phillips' office.

102.    For example, Ms. Raffaele's classroom was adjacent to, and in extremely close proximity to, the TV studio where Phillips' office was located and where many of the illegal and inappropriate acts and assaults occurred.

103.    Multiple agents and/or employees of Conestoga High School and Tredyffrin/Easttown, including, but not limited to, Mr. Azar (TV studio aide), as well as several of Plaintiff's teachers mentioned above, were aware that Phillips was meeting with Plaintiff in Phillips' office on almost a daily basis.

104.    For example, in March 2017, Mr. Azar referred to Plaintiff as "Art's girlfriend" in front of Ms. Houseman (Business/Technology teacher), Ms. Wilson (Language and Composition teacher), and Phillips.

105.    Multiple agents and/or employees of Conestoga High School and Tredyffrin/Easttown were aware that Phillips had taken an unusual interest, and spent an inordinate amount of time, with Plaintiff.  Their reckless disregard of the indecent and inappropriate relationship between Plaintiff and Phillips allowed it to continue.

106.    Multiple agents and/or employees of Conestoga High School and Tredyffrin/Easttown were aware that Phillips had taken Plaintiff off school grounds and on shopping and other trips around the area.

107.    Phillips told Plaintiff that he believed that Mr. Azar and Ms. Houseman knew about the relationship between Phillips and Plaintiff.

108.    Plaintiff was kissed, groped/fondled and/or sexually assaulted by Phillips in his office every day for four months.

109.     Between April 4, 2017 and April 10, 2017, Phillips raped Plaintiff approximately ten times.  The abuse ended on April 10, 2017, when Conestoga High School's 2017 Spring Break began.

110.     As a result of sexual abuse, and the culture of indifference that Tredyffrin/Easttown created, Plaintiff withdrew from her normal activities, including regular and timely class attendance, sports, certain extracurricular activities and two AP classes.

111.     Moreover, Plaintiff's grades began to suffer.  Plaintiff dropped from a straight A student over the course of a few months to a student with several lower grades.

112.     On Tuesday, April 11, 2017, Plaintiff's mother observed Phillips' car parked near Plaintiff's driveway at approximately 10:00 a.m.

113.     Plaintiff's mother observed Phillips speaking to Plaintiff, who was walking the family's dog.

114.     When Phillips saw Plaintiff's mother observing him, he quickly drove away from the family's property.

115.     Plaintiff's mother followed Phillips from her home in Tredyffrin Township to U.S. Route 202, where Phillips headed south. Phillips exited Route 202 and turned onto Route 29/Lancaster Avenue.

116.     When Plaintiff's mother followed him onto Route 29, Phillips made an illegal turn and Plaintiff's mother was unable to follow him.

117.     Because Phillips had previously told and threatened Plaintiff not to speak to anyone about their relationship or that he would be fired and her reputation would be harmed, Plaintiff

made up a story about Phillips' presence and did not tell her parents about Phillips' misconduct at this time.

118.    On Tuesday, April 18, 2017, the first school day after Conestoga's Spring Break, Plaintiff's parents went to Conestoga High School at approximately 9:00 a.m. and requested a meeting with Anthony DiLella, one of the Assistant Principals at Conestoga High School.

119.    Plaintiff's parents reported the incident from April 11th to Assistant Principal DiLella.

120.    During the time that Plaintiff's parents were meeting with Assistant Principal DiLella, the Assistant Principal checked Plaintiff's file and told Plaintiff's parents that there were no "hall passes" in Plaintiff's file.  Nor were there any records of Plaintiff being taken off school grounds during the school day.

121.    Plaintiff's parents left Conestoga around 10:00 a.m.

122.    Upon information and belief, almost immediately after Plaintiff's parents left Conestoga, school administrators, including Assistant Principal DiLella, Principal Meisinger, and/or Christine Dunleavy, Ed.D., a Mental Health Specialist at Conestoga, searched for Plaintiff. They did not find her in her assigned classroom; rather, they located Plaintiff near Phillips' office.

123.    Assistant Principal DiLella and Principal Meisinger began to interrogate Plaintiff, without her parents' knowledge or consent.

124.    Soon thereafter, school administrators contacted Tredyffrin Township Police to report Phillips' conduct.

125.    Later that day, at approximately 2:00 p.m., Plaintiff's parents were called by Dr. Dunleavy and asked to return to Conestoga to discuss Plaintiff's situation.

126.    At that time, Assistant Principal DiLella informed Plaintiff's parents that Phillips had been removed from the building, and that the police had been contacted.

127.    Plaintiff's parents asked Assistant Principal DiLella if the victim or her family were in danger since Phillips had already brazenly appeared at their home and parked near their driveway.  Assistant Principal DiLella told Plaintiff's parents that he knew Phillips and told them Phillips was "harmless."

128.    Upon information and belief, Assistant Principal DiLella told James Bankert, another Assistant Principal at Conestoga High School, that DiLella had seen Phillips pull Plaintiff into an empty classroom at some point earlier in the school year.  Upon information and belief, Assistant Principal DiLella was referring to the incident described in paragraph 39, *supra*.

129.    Assistant Principal DiLella told Assistant Principal Bankert that the incident "made the hair on the back of my [Assistant Principal DiLella] neck standup."

130.    Nevertheless, Assistant Principal DiLella did not discipline, interrogate, question or interview Phillips.  Nor did he inform Plaintiff's parents about this "strange" incident he witnessed between Plaintiff and Phillips.

131.    In addition, in April 2017, Assistant Principal Bankert told Dr. Dunleavy that she needed to check on Plaintiff because he saw "something in her [Plaintiff's] eyes" that worried him.  Assistant Principal Bankert never followed up on this observation.

132.    Thus, numerous employees and agents of Tredyffrin/Easttown School District, including Principal Meisinger, Assistant Principal DiLella and the aforementioned teachers and staff, failed to protect Plaintiff.  These individuals were aware of Phillips' conduct towards Plaintiff, her repeated absences and hall passes written by Phillips, her failing grades, and

something worrisome in her eyes but, nonetheless, failed to take *any* steps to investigate and/or halt Phillips' illegal conduct.

133.   On April 19, 2017, the minor Plaintiff was interviewed by Joseph Walton, a detective from the Chester County District Attorneys' Office.   Detective Watson is a child sex abuse specialist.

134.   Plaintiff told Detective Watson of the prolonged sexual harassment and repeated sexual assaults by Phillips.

135.   Chester County District Attorney Thomas Hogan met with Plaintiff's parents on April 20, 2017.   Among other things, District Attorney Hogan told Plaintiff's parents that Tredyffrin/Easttown administrators should not have interrogated Plaintiff.

136.   On April 20, 2017, Phillips was interviewed by the police and Chester County detectives.  In that interview, Phillips admitted to communicating with Plaintiff via messaging and to driving Plaintiff in his vehicle.

137.   The Chester County Detective's Computer Forensic examined two mobile telephones utilized by Plaintiff, which contained several hundred communications of a sexual nature with Phillips. The police also recovered photographs from Plaintiff's mobile telephone; one of the photographs depicts the mid-section of an adult male with an erect penis. Several other photographs depict Plaintiff with Phillips.

138.   On April 21, 2017, Phillips was charged with 60 felony counts, including violations of various Pennsylvania criminal statutes.  These included the following counts:

  a.   10 felony counts of intercourse/sexual contact with a student (18 Pa.C.S.A. § 3124.2(a)(2)(1));

  b.   10 counts of felony aggravated indecent assault without consent and with the victim being less than 16 (18 Pa.C.S.A. § 3125(a)(1), (8));

    c.      10 counts of felony corruption of minors with the defendant 18 years old or
above (18 Pa.C.S.A. § 6301(a)(1)(ii));

    d.      10 counts of felony criminal use of a communication facility (18 Pa.C.S.A.
§ 7512(a)); and

    e.      related charges, according to court records.

139.    On April 21, 2017, Tredyffrin/Easttown posted the following letter on its website

(the "April 21 Letter"):

**T/E Letter to Families on Arrest of Paraprofessional**

April 21, 2017.

Dear T/E Families,

With deepest regret we write to inform you that today the District was notified by law
enforcement that Arthur Phillips, a District paraprofessional, has been arrested for
charges related to unlawful conduct with a Conestoga High School student. He has
worked as a paraprofessional at Conestoga since March 2006 and has been suspended
pending termination. Out of respect for student privacy, we will not comment on the
details of this matter.

We are prepared to provide assistance to any students who are in need of support as a
result of learning this information. Please contact a school administrator or counselor
if your child or a student you know might benefit from such support. We have no
information to indicate the employee was inappropriately involved with other students.
If anyone has relevant information about this matter, please contact Tredyffrin
Township Police Lieutenant Joseph Glatts at (610)644-3221.

We cannot adequately express our shock and dismay upon learning an adult
responsible for the care of our students has been charged with such a deplorable act.
We will continue to review and strengthen where necessary our existing policies and
practices regarding faculty and staff training, with respect to maintaining appropriate
boundaries with students. The welfare of all students remains our highest priority.

Sincerely,

Dr. Richard Gusick
Superintendent
(610)240-1901

Dr. Amy Meisinger
Principal

21

(610)240-1001

140.    Upon information and belief, the April 21 Letter was not posted on the website of Conestoga High School.

141.    Upon information and belief, the April 21 Letter was deleted from the Tredyffrin/Easttown website on or before May 3, 2017.

142.    On May 12, 2017, the District Attorney of Chester County withdrew the original criminal complaint and replaced it with a new Complaint increasing the number of criminal charges against Phillips. The new Complaint includes the following counts:

a.    10 first degree felony counts of statutory sexual assault (18 Pa.C.S.A. § 3122.1(B));

b.    10 first degree felony counts of involuntary deviate sexual intercourse (18 Pa.C.S.A. § 3123(a)(7));

c.    35 third degree felony counts for institutional intercourse/sexual contact with a student (18 Pa.C.S.A. § 3124(a)(21));

d.    10 second degree felony counts of aggravated indecent assault without consent and with the victim being less than 16 (18 Pa.C.S.A. § 3125(a)(1)(8));

e.    30 second degree misdemeanor counts of indecent assault of a person under 16 years of age (18 Pa.C.S.A. § 3126(a)(8));

f.    1 third degree felony count of endangering the welfare of a child (18 Pa.C.S.A. § 4304(a)(1));

g.    1 third degree felony count of corruption of minors with the defendant 18 years old or above (18 Pa.C.S.A. § 6301(a)(1)(ii));

h.    1 first degree felony count of unlawful sexual contact with a minor (18 Pa.C.S.A. § 6318(a)(1));

i.    1 third degree felony count of unlawful contact with a minor involving obscene and other sexual materials (18 Pa.C.S.A. § 6318(a)(4));

j.    1 third degree felony count of dissemination of sexually explicit material to a minor (18 Pa.C.S.A. § 5903(c)(1));

22

k.      1 third degree felony count of criminal use of a communication facility (18 Pa.C.S.A. § 7512(a)); and

l.      related charges, according to court records.

143.    Phillips' conduct was outrageous, open and notorious, such that his pattern of behavior was known by Tredyffrin/Easttown and Conestoga administrators, teachers and students.

### Tredyffrin/Easttown's Recent History of Sex-Related Scandals

144.    Christine Towers, 26, a former teacher's aide and coach at Conestoga High School, was recently sentenced to serve 11 to 23 months in jail for having a sexual relationship with a 16-year-old student whom she tutored. "Ex-Aide at Conestoga High School gets jail time for sex with student", Philadelphia Inquirer, March 6, 2017 (available at http://www.philly.com/philly/news/Conestoga-High-School-Main-Line-teacher-coach-pleads-guilty-to-sex-student.html).

145.    Published reports indicate that Towers had an affair with the learning disabled student in during the 2015-16 school year. *See id.*

146.    Towers was an employee of Tredyffrin/Easttown from August 2014 until April 2016, when she was arrested. During that time, Towers coached girls' soccer, basketball, softball, and track at the middle school and high school levels. *See id.*

147.    Like Phillips, the offender in the instant case, Towers, among other things, took her minor victim from school property to the King of Prussia Mall and to Center City Philadelphia. *See id.*

148.    The second related scandal in the School District occurred just over a year ago, in March 2016, when a hazing incident involving the Conestoga High School football team became

23

national news.

149.    Several older Conestoga High School male students allegedly assaulted an underclassman, including allegedly sodomizing the victim with a broom handle, in October 2015. John Kopp, "Conestoga High football players charged in 'No Gay Thursday' assault", PhillyVoice, March 4, 2016 (available at http://www.phillyvoice.com/three-conestoga-high-football-players-charged-no-gay-thursday-assault/).

150.    The incident allegedly occurred as part of "No Gay Thursday", a weekly ritual in which actions otherwise deemed "gay" were permissible.  The misconduct included upperclassmen placing their genitals on other players' heads, players "grinding" up against other players' legs and upperclassmen ordering younger players to undress them. *See id.*

151.    Although Tredyffrin/Easttown claimed that it had no knowledge of the football team's rituals and traditions of sexual assault, Chester County District Attorney Thomas Hogan described the case as one of "ignorance, violence, and a lack of supervision."  Michelle Bond, "No-Gay Thursday: Horrid abuse alleged at Conestoga", Philadelphia Inquirer, March 5, 2016 (available at http://www.philly.com/philly/news/20160305_DA__3_charged_in_Conestoga_hazing_incident.html).

152.    Finally, in November 2015, three Tredyffrin/Easttown students, ages 11 to 15, faced charges of distributing or offering to share sexually explicit images, including photos of their middle-school classmates.  Michelle Bond and Ben Finley, "Police: More charges possible in Chesco school sexting", Philadelphia Inquirer, Nov. 4, 2015 (available at http://www.philly.com/philly/news/20151104_Chesco_children_charged_with_sending_porn.ht

ml).  A fourth boy was charged several days later.  Michelle Bond and Ben Finley, "Fourth boy charged in Chesco school sexting case", Philadelphia Inquirer, Nov. 13, 2015 (available at http://www.philly.com/philly/education/20151113_Fourth_boy_charged_in_Chesco_school_sexting_case.html).

153.    The students attended Valley Forge Middle School and Tredyffrin/Easttown Middle School.  Bond and Finley, "Police: More charges possible in Chesco school sexting", *supra.*

154.    The School District's pattern of deliberate and reckless indifference to signs of ongoing sexual harassment and sexual abuse created a culture in its schools that permitted Phillips' predatory conduct.

155.    The various actions perpetrated in the School District during the past three years, as well as the sexual assaults endured by Plaintiff, are part of a culture of indifference in the Tredyffrin/Easttown School District.  This culture of indifference permits sexual abuse and other forms of sexual harassment by failing to promptly investigate signs and red flags, and failing to enforce preventive policies against sexual abuse and sexual harassment in violation of Title IX and other constitutional rights.

156.    Although various teachers and members of the school's administration knew or should have known that Phillips was acting inappropriately towards Plaintiff, the School District failed to take any action against Phillips.  The School District, and its agents and employees, failed to report Phillips' conduct to an appropriate county agency, to the Department of Public Welfare, or to law enforcement authorities, in violation of the Pennsylvania Child Protective Services Law then in effect, 23 PA. CONS. STAT. § 6301 *et seq.*

157.    As a consequence of the failure by the School District and its employees to take meaningful, effective and/or legally required action, Phillips was able to continue his course of conduct and persist in his sexual harassment and sexual abuse of Plaintiff for months.

158.    The School District never reported Phillips' conduct to law enforcement authorities until April 18, 2017, when it informed the Tredyffrin Township Police Department ("Tredyffrin Police"), only after Plaintiff's parents had initiated an investigation into Phillips' relationship with their minor daughter.

159.    Tredyffrin/Easttown failed to take reasonable steps to protect its students, including minor girls like Plaintiff, from Phillips' sexual misconduct even though their highest level of officials knew or should have known about the danger Phillips posed to children.

160.    Although Tredyffrin/Easttown was aware of the inappropriate conduct of Phillips towards Plaintiff, he was allowed to continue working at the school.

161.    Tredyffrin/Easttown, by and through its policy-making officials, including, but not limited to, Richard Gusick, Ed.D., Superintendent of the School District, and Amy A. Meisinger, Ph.D., Principal of Conestoga High School, failed to maintain and/or enforce policies which resulted in violations of Plaintiff's constitutional and federal statutory rights.

162.    Defendant Principal Meisinger failed to maintain and/or enforce policies which resulted in violations of Plaintiff's constitutional and federal statutory rights.

163.    Defendant Tredyffrin/Easttown failed to take reasonable steps and/or implement reasonable safeguards to avoid acts of unlawful sexual conduct by Phillips. Defendant's failures include, but are not limited to, investigating Phillips and his repeated off-campus excursions with Plaintiff, investigating the frequent hall passes written by Phillips for Plaintiff and investigating

Plaintiff's slipping grades, continuous absences, and withdrawn behaviors, among others.

164.    Defendant Tredyffrin/Easttown is responsible for ensuring that all of its employees are properly trained and supervised to perform their jobs.

165.    Defendant Tredyffrin/Easttown is responsible for the acts and omissions of its employees.

166.    The conduct of Defendants Tredyffrin/Easttown and Principal Meisinger was and continues to be a substantial factor in bringing about the severe and permanent harm suffered by Plaintiff.

167.    The conduct of Defendants Tredyffrin/Easttown and Principal Meisinger was wanton and outrageous and demonstrates a reckless indifference to the rights of others, including Plaintiff.

168.    The policies, procedures and customs, if any, adopted by Defendant Tredyffrin/Easttown failed to protect female students, such as Plaintiff herein, from the aforesaid conduct of Phillips.

169.    Defendant Tredyffrin/Easttown's failed to train its employees to detect and report sexual harassment and sexual abuse of students and failed to properly respond to student reports of sexual harassment and sexual abuse.

170.    As a result of the sexual harassment and sexual abuse to which Plaintiff was subjected by Phillips and the failure of Tredyffrin/Easttown to take reasonable steps to protect Plaintiff from that abuse, Plaintiff has suffered and will continue to suffer from severe emotional, psychological, physical and financial harm, including, but not limited to, pain, mental anguish, anxiety, humiliation, loss of self-esteem, loss of enjoyment of life, fear, loss of earnings and

earning capacity. Plaintiff has also incurred and will continue to incur expenses related to her

losses and harm, including, but not limited to, expenses for medical care and therapy.

171.     While any citizen may report suspected child abuse in Pennsylvania, certain classes

of individuals are mandated to report suspected child abuse. 23 PA. CONS. STAT. § 6301 *et seq.*

Mandated reporters are required by law to report suspected child abuse.

172.     Pennsylvania's Child Protective Services Law ("CPSL") was amended in 2014,

including substantial changes to the list of people who are mandated reporters. Effective December

31, 2014, any school employee, including teachers and aides, are mandated reporters.

**COUNT I**
**PLAINTIFFS vs. DEFENDANTS**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983**

173.     The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

174.     Under the Fourteenth Amendment, Plaintiff D.B. had a right to bodily integrity,

which was violated by Phillips' inappropriate sexual touching, groping, molesting and grooming

and Tredyffrin/Easttown's failure to prevent it. There existed in the Tredyffrin/Easttown School

District, a custom, practice and/or policy of deliberate indifference to sexual harassment and

sexual abuse of students and/or active concealment of instances of known or suspected sexual

harassment and sexual abuse of students.

175.     Tredyffrin/Easttown had a duty to exercise due care in the supervision of its staff,

teachers, and contractors. In addition, Tredyffrin/Easttown had a duty to properly screen, hire,

train, monitor, supervise and/or discipline staff, teachers, and contractors employed by the

School District. Tredyffrin/Easttown had a further duty to ensure that staff, teachers, and

contractors were aware of and guided by appropriate policies and procedures related to child safety and the welfare of minor students.

176.     This custom, practice and/or policy of deliberate indifference was established and maintained by the administrative personnel of Tredyffrin/Easttown, through their knowing acquiescence and tolerance of misconduct on the part of school personnel and the failure to take action to stop such conduct and/or train personnel to avoid such instances of misconduct.

177.     This custom, practice and/or policy existed for a significant period of time prior to the sexual assaults upon Plaintiff.

178.     Defendants' reckless, negligent and careless disregard for the safety of its students, including minor Plaintiff, resulted in repeated assaults by Phillips.

179.     The customs, practices and/or policies of Tredyffrin/Easttown consisted of the following:

   a       Deliberate indifference of the misconduct and constitutional deprivations perpetrated by its subordinate, agent and employee, Phillips;

   b.      Failing to properly and timely investigate Phillips' relationship with Plaintiff;

   c.      Failing to adequately supervise Phillips' and Plaintiff's relationship;

   d.      Failing to remedy Phillips' misconduct with regard to Plaintiff;

   e.      Deliberate indifference to the constitutional rights of students in the Tredyffrin/Easttown School District, including Plaintiff;

   f.      Deliberate indifference to the need for training and supervision of employees, such as Phillips, with respect to impermissible conduct and contact with students;

   g.      Permitting Phillips to remain in charge of daily activities, despite knowledge that Phillips presented a significant threat to the health, safety and welfare students, including Plaintiff;

h.    Failing to adequately supervise Phillips on Tredyffrin/Easttown's property and/or Conestoga High School's campus;

i.    Failing to maintain a resource officer that would provide an outlet to Plaintiff and other students to prevent such incidents from occurring;

j.    The training procedure(s) of the School District's employees and agents, including, but not limited to, teachers and aides, was inadequate;

k.    Failing to monitor Phillips' activities despite actual knowledge that he posed a threat to Plaintiff;

l.    Failing to adopt, implement and/or follow proper polices and procedure to ensure identification and reporting of sexual abuse of students by school employees;

m.    Failing to take timely steps to prevent contact by Phillips with Plaintiff after Tredyffrin/Easttown knew or should have known of inappropriate misconduct, communication and interactions between Phillips and Plaintiff;

n.    Permitting Phillips to have unsupervised and unmonitored access to minor female students;

o.    Failing to review and monitor the school's security footage;

p.    Failing to take proper security measures;

q.    Failing to adequately control interactions between students and staff;

r.    Failing to provide for the safety and protection of Plaintiff; and/or

s.    Failing to implement policies or procedures regarding sexual abuse.

180.    Tredyffrin/Easttown, through its decision-makers and policy-makers, including Superintendent Gusick and Principal Meisinger, failed to enforce, and violated, its own policies and procedures, including, but not limited to:

a.    Policy Number 4330, relating to *Harassment by and of District Employees*;

b.    Policy and Regulation 4344, relating to *Electronic Communication between Employees and Students*;

     c.      Policy Number 5114, relating to *Attendance Records*;

     d.      Policy Number 5420, relating to *Harassment by Non-Students*;

     e.      Policy Number 5436, relating to *Reporting Suspected Child Abuse*;

     f.      Policy Number 5461, relating to *Maintaining Appropriate Boundaries with Students*;

     g.      the "Class Attendance, Class Cuts" policy, as set forth in the Conestoga High School Student Handbook, 2016-17;

     h.      the "Leaving Campus" policy, as set forth in the Conestoga High School Student Handbook, 2016-17;

     i.      the "Cafeteria/Lunch/Food-Drink" policy, as set forth in the Conestoga High School Student Handbook, 2016-17; and/or

     j.      the "Hall Pass Procedure", as set forth in the Conestoga High School Student Handbook, 2016-17.

181.    Tredyffrin/Easttown's policy, practice, and custom played an affirmative role in facilitating, bringing about and fostering Phillips' sexual abuse of Plaintiff.

182.    Alternatively, Tredyffrin/Easttown had no plan, policy, or practice in place to identify, investigate and/or report sexual misconduct between a teacher and student.

183.    The actions of Tredyffrin/Easttown, through its decision-makers and policy-makers, including Superintendent Gusick and Principal Meisinger, in failing to investigate and/or improperly investigating Phillips' conduct was undertaken pursuant to a policy, custom, or practice of not pursuing or investigating such situations and, thereby, acquiescing in instances of improper, inappropriate, and unprofessional contacts by teacher-employees with students.

184.    The sexual harassment, molestation and abuse of Plaintiff occurred not only as a result of Phillips' actions, but because of the actions and/or inactions of Tredyffrin/Easttown and its employees, administrators and/or agents, in failing to, among other things, properly train, hire and supervise Phillips and in failing to prevent him from harming Plaintiff.

185.    At all material times, Tredyffrin/Easttown acted under color of state law and the School District acted through its administration, school board members and other agents, servants and employees.

186.    The deliberately indifferent customs, practices and/or policies of Tredyffrin/Easttown, as set forth above, created a climate in which Phillips could groom and prey upon Plaintiff with impunity.

187.    Agents/employees of Tredyffrin/Easttown, including, but not limited to, those administrators and teachers identified above, were aware of the excessive interaction, including closed door meetings and off-campus trips, between Phillips and Minor Plaintiff and failed to take any steps to manage, supervise, investigate or stop such events.

188.    Tredyffrin/Easttown, by and through its employees/agents were on notice that Phillips and Minor Plaintiff were regularly engaging in closed door meetings and off-campus trips, without the presence of others.

189.    Tredyffrin/Easttown's actions and/or inactions of allowing ongoing, practically daily, closed door meetings and outings between an adult male employee/agent and a minor female student, without managing, supervising, investigating or stopping such meetings, constitutes outrageous negligence and shocks the conscience.

190.    As a direct and proximate result of the aforesaid customs, practices, and/or policies of Tredyffrin/Easttown, and/or lack thereof, Plaintiff was deprived of her rights, privileges and immunities secured by the constitution or laws of the United States, specifically her liberty interest in personal bodily integrity and freedom from sexual harassment and sexual abuse guaranteed under the Fourteenth Amendment to the United States Constitution.

191.    As a direct and proximate result of the aforesaid customs, practices, and/or policies of Tredyffrin/Easttown, Plaintiff was deprived of her rights, privileges and immunities secured by the constitution or laws of the United States, specifically her right to be free from invasion of her personal security through sexual harassment and sexual abuse as guaranteed under the Fourteenth Amendment to the United States Constitution.

192.    As a result of the customs, practices and/or policies of Tredyffrin/Easttown, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation and emotional and physical distress.

**WHEREFORE,** Plaintiffs seek damages, against Defendants, in an amount in excess of $75,000, including costs of suit, interest and attorney's fees and such other relief as this Honorable Court deems appropriate.

### COUNT II
### PLAINTIFFS vs. TREDYFFRIN/EASTTOWN
### <u>VIOLATION OF TITLE IX, 20 U.S.C. § 1681</u>

193.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

194.    Plaintiff D.B., on the basis of her sex, was denied benefits and/or subjected to discrimination under an education program or activity receiving federal funding.

195.    The sex-based harassment was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

196.    Tredyffrin/Easttown created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because: a) Plaintiff was a member of a protected class; b) she was subjected to

sexual harassment in the form of a sexual assault and sexual harassment by a school employee; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by Tredyffrin/Easttown's lack of policies and procedures and/or failure to properly investigate and/or address the sexual assault and subsequent harassment.

197.    Tredyffrin/Easttown and its officials had actual knowledge of Phillips' sexual misconduct and the resulting harassment of Plaintiff.

198.    Plaintiff was further denied benefits and/or subjected to discrimination under an education program or activity receiving federal funding due to Tredyffrin/Easttown's failure to investigate and discipline Phillips in a timely manner, after having knowledge of Phillips' sexual misconduct and harassment of Plaintiff.

199.    Tredyffrin/Easttown's failure to promptly and appropriately respond to the sexual misconduct resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in Tredyffrin/Easttown's education program in violation of Title IX.

200.    Tredyffrin/Easttown acted with deliberate indifference toward Plaintiff.

201.    Tredyffrin/Easttown engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted, from seeking protection and prosecution of sexual assaults.

202.    This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students, including Plaintiff.

203.    Tredyffrin/Easttown had actual notice of the relationship involving Phillips and Plaintiff and had an opportunity to rectify the violation/discrimination, but failed to do so.

204.    Tredyffrin/Easttown had actual notice of the violation and was deliberately indifferent to the discrimination.

205.    Plaintiff was subjected to a sexually hostile educational environment.

206.    At all material times Tredyffrin/Easttown acted under color of state law and the School District acted through its administration, school board members and other agents, servants and employees.

207.    Tredyffrin/Easttown had actual notice of the harassment and hostile environment, but were deliberately indifferent to the harassment and hostile environment.

208.    As a result of the customs, practices and/or policies and/or lack thereof of Tredyffrin/Easttown, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation and emotional and physical distress.

209.    Based upon the foregoing violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 *et. seq.*, Plaintiff has suffered in the past, and will continue to suffer in the future, from severe mental anguish, embarrassment, humiliation and emotional and physical distress.

**WHEREFORE**, Plaintiffs seek damages, against Defendant Tredyffrin/Easttown, in an amount in excess of $75,000, including costs of suit, interest, attorney's fees and such other relief as this Honorable Court deems appropriate.

**ROSS FELLER CASEY, LLP**

By: _____

MATTHEW A. CASEY, ESQUIRE - PA 84443
BRIAN J. MCCORMICK, JR., ESQUIRE - PA 81437
CHRISTOPHER MALONEY, ESQUIRE – PA 64844
One Liberty Place
1650 Market Street, Suite 3450
Philadelphia, PA 19103
(215)574-2000 (t)
(215)574-3080 (f)

*Attorneys for Plaintiffs*

Dated: June 8, 2017