IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.B and C.B., on behalf of minor child D.B., Plaintiffs, | CIVIL ACTION |
| v. | |
| TREDYFFRIN/EASTTOWN SCHOOL DISTRICT, and AMY A. MEISINGER, Defendants. | NO. 17-2581 |

DuBois, J.                                                                                                                  June 8, 2018

# **M E M O R A N D U M**

## I.     INTRODUCTION

This case arises out of the sexual assault of D.B., a minor child, by Arthur Phillips, an instructional aide at Conestoga High School, where D.B. was a tenth-grade student. Plaintiffs A.B. and C.B. assert claims on behalf of their minor child D.B. under 42 U.S.C. § 1983 against Tredyffrin/Easttown School District and Dr. Amy Meisinger, the principal of Conestoga High School, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et. seq.* ("Title IX") against Tredyffrin/Easttown School District. Presently before the Court is Defendants' Motion to Dismiss. For the reasons that follow, the Motion is granted in part and denied in part.

## II.    BACKGROUND

The facts as alleged in Plaintiffs' Complaint are as follows. In January, 2017, D.B. was a 15-year-old tenth-grade student at Conestoga High School ("Conestoga") in Chester County, Pennsylvania. Compl. ¶ 22. Arthur Phillips was an instructional aide at Conestoga, working in the TV production studio. Compl. ¶ 24, 25. Conestoga is a public high school in the Tredyffrin/Easttown School District ("School District"). Compl. ¶¶ 12, 13. Defendant Dr. Amy Meisinger was the principal of Conestoga at all relevant times. Compl. ¶ 14.

Beginning in January, 2017, Phillips initiated improper and indecent sexual contact with D.B., including touching, kissing, fondling, and digital penetration. Compl. ¶ 30. Phillips forced D.B. into sexual intercourse at least five times in April, 2017. Compl. ¶ 32, 33. Phillips also made romantic and sexual comments to D.B. and sent D.B. a photograph of his penis via text message on at least two occasions. Compl. ¶¶ 40–42. Many of the sexual assaults occurred on school grounds and during school hours. Compl. ¶¶ 33, 47.

Plaintiffs allege that several faculty members at Conestoga knew about Phillips' inappropriate relationship with D.B. Piera Raffaele, a visual/performing arts teacher at Conestoga, accompanied Phillips and D.B. to restaurants and went on a double date with her husband, Phillips, and D.B. on or around D.B.'s sixteenth birthday in March, 2017. Compl. ¶¶ 57, 58. In addition, TV studio aide Alex Azar referred to D.B. as Phillips' girlfriend in front of business and technology teacher Susan Houseman and language and composition teacher Caitlin Wilson. Compl. ¶ 104.

Plaintiffs also allege that members of the Conestoga administration knew of some of Phillips' inappropriate behavior. Assistant Principal Anthony DiLella saw Phillips pull D.B. into an empty classroom and told Assistant Principal Bankert that the incident "made the hair on the back of my neck standup [sic]." Compl. ¶¶ 39, 128, 129. Assistant Principal Bankert told Dr. Christine Dunleavy, a mental health specialist at Conestoga, that she needed to check on D.B. because he "saw something in [D.B's] eyes" that worried him. Compl. ¶ 131. Assistant Principals DiLella and Bankert did nothing to discipline or question Phillips or inform D.B.'s parents about the incident. Compl. ¶¶ 130, 131.

On April 11, 2017, during Conestoga's spring break, D.B.'s mother saw Phillips' car parked near plaintiffs' home and saw Phillips speaking to D.B. Compl. ¶¶ 112, 113. On April

18, 2017, the first school day following spring break, D.B.'s parents went to Conestoga to meet with Assistant Principal DiLella. Compl. ¶ 118. After D.B.'s parents left Conestoga, Principal Meisinger, Assistant Principal DiLella, and Dr. Dunleavy searched for D.B. and found her near Phillips' office. Compl. ¶ 122. After speaking with D.B., school administrators contacted the Tredyffrin Township Police and removed Phillips from Conestoga that day. Compl. ¶ 123–26. On April 21, 2017, Phillips was charged with 60 felony counts. Compl. ¶ 138.

The Complaint also sets forth allegations of several sex-related scandals in the School District. First, Christine Towers, a former teacher's aide and coach at Conestoga, was convicted of having sex in 2016 with a 16-year-old learning-disabled student whom she tutored. Compl. ¶¶ 144, 145. Second, in October, 2015, upperclassmen students on the football team allegedly sodomized an underclassmen teammate with a broom handle. Compl. ¶¶ 148, 149. Third, in November, 2015, three students ages 11 to 15 faced charges of distributing or offering to share sexually explicit images, including photos of their classmates. Compl. ¶ 152.

## III. APPLICABLE LAW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A district court first identifies those factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not

3

entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses the remaining "'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether the complaint states a plausible claim for relief. *Id.*

## IV. DISCUSSION

Plaintiffs assert a § 1983 claim against Principal Meisinger and the School District and a sexual discrimination and harassment claim under Title IX against the School District. Defendants move to dismiss all claims against them. The Court addresses each argument in turn.

### A. Plaintiffs properly pled a § 1983 claim against the School District for deliberate indifference in failing to train its employees.

Defendants argue that plaintiffs fail to allege that D.B. was harmed pursuant to a custom or policy of the School District as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978).

To state a claim under § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). To establish municipal liability under § 1983, a plaintiff must demonstrate (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694. "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.* (quoting *Monell*, 436 U.S. at 690).

The United States Court of Appeals for the Third Circuit has found "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003).

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Id.* (internal quotations and citations omitted). Plaintiffs argue that they properly allege a municipal custom or policy through each of the three situations detailed in *Natale*. Pls.' Resp. 9.

The Court agrees with defendants that plaintiffs fail to allege an affirmative policy or an act of the policymaker itself that caused D.B.'s constitutional harm. Rather, plaintiffs' allegations must be analyzed under the third situation described in *Natale*: failures to act where "the policymaker can reasonably be said to have been deliberately indifferent to the need" to "take some action to control the agents of the government." *Natale*, 318 F.3d at 584. The Court next addresses whether plaintiffs properly pled a § 1983 deliberate indifference claim.

A municipality's failure to train, supervise, or discipline its employees may be "properly thought of as a city 'policy or custom' that is actionable under § 1983" only where the failure "amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Plaintiffs "must identify a failure to provide specific [training, supervision, or discipline] that has a causal nexus with their injuries and must demonstrate that the absence of that specific [training, supervision, or

5

discipline] can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). Where the risk to constitutional rights is not obvious from the nature of the activity, "deliberate indifference on the part of city policymakers to the need for" training, supervision, or discipline may be inferred from "a pattern of constitutional violations." *Sample v. Diecks*, 885 F.2d 1099, 1116. The Supreme Court has held that a claim for failure to train turns on the deficiency of the "program" as a whole and its application "over time to multiple employees." *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997). Consequently, allegations that "a particular [employee] may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the [employee's] shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390–91.

The Court concludes that plaintiffs properly state a claim that the School District was deliberately indifferent in failing to train employees with respect to impermissible contact and other interactions with students. Compl. ¶¶ 176, 179.f. Plaintiffs assert that the School District has a history of sex-related scandals. Compl. ¶¶ 144–153. The Court agrees and finds that plaintiffs allege a failure to train at least two employees over a period of time with respect to impermissible contact and other interactions with students. *See Bryan Cnty.*, 520 U.S. at 407 (holding that failure to train claims under § 1983 require a failure to train multiple employees over time). The allegations in the Complaint regarding Phillips, and the fact that Christine Towers, a former teacher's aide and coach at Conestoga, was convicted of having sex with a 16-year-old student, are sufficient to state a claim that the School District was deliberately indifferent in failing to train employees with respect to impermissible contact and other interactions with students. The Court further concludes that plaintiffs properly state a claim

6

against the School District for failing to adequately train its employees to detect and report incidents in which other employees sexually harassed or abused students. Compl. ¶¶ 169, 179.j, l. On this issue, plaintiffs assert that several Conestoga employees—visual and performing arts teacher Piera Raffaele, TV studio aide Alex Azar, business and technology teacher Susan Houseman, and language and composition teacher Caitlin Wilson—knew about Phillips' inappropriate relationship with D.B. and failed to report the abuse to the administration, the School District, or law enforcement. Compl. ¶¶ 58–62, 104.

The remainder of plaintiffs' allegations fail to state a claim under § 1983. Plaintiffs' claims that the School District and the administration failed to investigate Phillips' conduct, Compl. ¶ 179.b., or supervise or discipline Phillips, Compl. ¶ 179.c, g, k, n, fail because there are no allegations that the School District was on notice of Phillips' misconduct until April 18, 2017, when D.B.'s parents met with Assistant Principal DiLella and school administrators thereafter contacted the Tredyffrin Township Police and removed Phillips from Conestoga that same day. Unlike *Beck v. City of Pittsburgh*, 89 F.3d 966, 971–72 (3d Cir. 1996), in which a police officer had been the subject of five complaints involving the use of excessive force, in this case, plaintiffs do not allege that Phillips had been the subject of any prior complaints. Claims that the School District and administration failed to enforce policies regarding teachers issuing hall passes and students attending class regularly and eating lunch in the designated areas, Compl. ¶¶ 70, 71, 84–96, do not state a claim under § 1983 because such failures do not amount to deliberate indifference to D.B.'s constitutional right to bodily integrity guaranteed by the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 727 (3d Cir. 1989).

### B. Plaintiffs properly pled a supervisory liability claim against Principal Meisinger.

Defendants argue that plaintiffs' claims against Dr. Meisinger in her individual capacity should be dismissed because plaintiffs fail to assert a claim for supervisory liability.

"Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking*, 882 F.2d at 725). "The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)).

Plaintiffs do not allege that Principal Meisinger participated in violating D.B.'s rights, directed others to violate them, or that she had knowledge of and acquiesced in her subordinate's violation. However, plaintiffs properly allege a claim for supervisory liability against Principal Meisinger under the theory that she was deliberately indifferent in failing to train employees with respect to impermissible contact and other interactions with students and in failing to train employees to detect and report when other employees engage in such misconduct.

### C. Principal Meisinger is not protected by qualified immunity based on the present state of the record.

Defendants further argue that plaintiffs' supervisory liability claim against Principal Meisinger should be dismissed because she is protected by qualified immunity.

8

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity analysis involves two steps: "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (quoting *Pearson*, 555 U.S. at 232). The Third Circuit has held that "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted); *cf. Saucier v. Katz*, 533 U.S. 194, 201 (2001) (qualified immunity determined, in part, on basis of "parties' submissions").

The Court concludes that Principal Meisinger's qualified immunity defense is not established on the face of the Complaint. Accordingly, plaintiffs may proceed with their claim that Principal Meisinger is liable in her individual capacity for failing to train employees with respect to impermissible contact and other interactions with students and to detect and report instances in which other employees engage in sexual misconduct with students.

### D. Plaintiffs state a claim for sexual harassment and discrimination under Title IX.

Plaintiffs also assert that the School District violated D.B.'s rights guaranteed by Title IX. The School District argues that this claim should be dismissed on the ground that plaintiffs fail to allege actual notice to an appropriate person followed by deliberate indifference.

Title IX's "express remedial scheme is predicated upon notice to an appropriate person and an opportunity to rectify any violation." *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S.

274, 290 (1998). A school district may be held liable in damages under Title IX for the sexual harassment of a student by one of the district's teachers only if "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id.* "[T]he response must amount to deliberate indifference to discrimination." *Id.*

The Court concludes that plaintiffs properly state a claim under Title IX. Assistant Principals DiLello and Bankert may be found to be appropriate persons under Title IX. Whether the assistant principals are appropriate persons under the statute is a fact-intensive inquiry based on the job responsibilities of each purported appropriate person. *See Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 170–173 (3d Cir. 2002). Other courts have found that assistant principals can be "appropriate persons" under Title IX. *See, e.g.*, *Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) (holding that assistant principal is "appropriate person" where principal and assistant principal alone possess authority to discipline students for sexual harassment); *Swanger v. Warrior Run School Dist.*, 137 F.Supp.3d 737, 752 (M.D. Pa. 2015) ("[B]ased on the record and solely for purposes of conducting a full analysis, the Court will assume that both Principal Cross and Assistant Principal Bertanzetti may constitute an 'appropriate person.'"), *rev'd and remanded on other grounds*, 659 Fed.Appx. 120 (3d Cir. 2016); *Seiwert v. Spencer-Owen Cmty. School Corp.*, 497 F.Supp.2d 942, 954 (S.D. Ind. 2007) (denying defendant's motion for summary judgment on Title IX claim where assistant principal was aware of discrimination).

Furthermore, plaintiffs allege that Assistant Principals DiLello and Bankert had actual knowledge of Phillips' misconduct and acted with deliberate indifference. "An educational

institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005) (quoting 3C Fed. Jury. Prac. & Instr. § 177.36 (5th ed. 2001)). "Actual knowledge requires more than the awareness of a mere possibility of harassment but less than absolute certainty that harassment has occurred." *Dawn L. v. Greater Johnstown School Dist.*, 586 F.Supp.2d 332, 367 (citing *Bostic*, 418 F.3d at 360). Plaintiffs allege that Assistant Principal DiLello told Assistant Principal Bankert that he saw Phillips pull D.B. into an empty classroom and close the door behind them. Plaintiffs further allege that Assistant Principals DiLello and Bankert were deliberately indifferent because they failed to question or discipline Phillips or inform D.B.'s parents of the incident. At this stage of the litigation, these allegations are sufficient to state a claim for sexual harassment and discrimination under Title IX. Accordingly, the Court denies that part of Defendants' Motion which seeks to dismiss plaintiffs' claim under Title IX.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. The Court denies that part of Defendants' Motion seeking to dismiss claims under § 1983 under the theory that the School District was deliberately indifferent in failing to train employees with respect to impermissible contact and other interactions with students and in failing to train employees to detect and report when other employees engage in such misconduct. The Court grants that part of Defendants' Motion seeking to dismiss plaintiffs' claims under § 1983 under all other theories of municipal liability. The Court denies that part of Defendants' Motion seeking to dismiss § 1983 claims against Principal Meisinger. Finally, that part of Defendants' Motion seeking to dismiss plaintiffs' claim under Title IX is denied. The ruling of the Court is

11

without prejudice to the right of the parties to seek reconsideration after the completion of discovery by motion for summary judgment and/or at trial.

The remaining claims in this case are (1) plaintiffs' claims under § 1983 that the School District and Principal Meisinger in her individual capacity were deliberately indifferent in failing to train employees with respect to impermissible contact and other interactions with students and in failing to train employees to detect and report when other employees engage in such misconduct and (2) plaintiffs' claim against the School District under Title IX. An appropriate order follows.