IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.B., | : | |
|                 Plaintiff, | : | No. 2:17-cv-02581-JD |
|     v. | : | |
| | : | |
| TREDYFFRIN/EASTTOWN | : | |
| SCHOOL DISTRICT and | : | |
| AMY A. MEISINGER, | : | |
|                 Defendants. | : | |

**MOTION *IN LIMINE* OF DEFENDANTS, TREDYFFRIN EASTTOWN SCHOOL DISTRCT AND AMY A. MEISINGER, TO PRECLUDE THE PROPOSED INAPPROPRIATE TESTIMONY OF PLAINTIFF'S EXPERT, EDWARD F. DRAGAN, ED.D.**

Defendants, Tredyffrin Easttown School District and Amy A. Meisinger, by and through their counsel, Connor Weber and Oberlies, hereby submits the following Motion *in Limine*, and in support thereof aver as follows:

1. This action arises from Plaintiff's claims under 42 U.S.C. §1983 and Title IX of the Education Amendments of 1972.

2. Specifically, Plaintiff contends that Defendants acted with deliberate indifference to sexual harassment and sexual abuse of students within the district, as well as created a hostile learning environment for students in the district.

3. Plaintiff's claims arise from a relationship that occurred between D.B. and Arthur Phillips, an aide employed by Defendant, Tredyffrin Easttown School District (hereinafter "TESD"), between January 2017 and April 2017.

**Report of Edward F. Dragan, Ed.D.**

4. In support of her claims in this matter, Plaintiff produced the report of Edward F. Dragan, Ed.D. A copy (redacted) of Mr. Dragan's report is attached hereto as Exhibit "A."

5. Mr. Dragan's report is replete of conclusions based on, at best, a limited reading of evidence, and at worst, mischaracterization of the testimony and facts of this case.

6. Further, portions of Mr. Dragan's report are based on inadmissible hearsay, and any conclusions from such hearsay should be precluded from being presented to the jury.

7. Beginning on page 45 of his report, Mr. Dragan offers "support" for his conclusions that "adult employees, who were designated as responsible persons by the District, were on notice of red flag behaviors, boundary violations, and sexual misconduct…" See Exhibit "A."

8. This section is replete with mischaracterizations or incomplete reporting of testimony of employees.

9. For example in paragraph 1, Mr. Dragan refers to Mr. Austin's police interview, wherein Mr. Austin told the police that Phillips made inappropriate jokes and had a dirty sense of humor. This is presumably to support some contention that Mr. Austin should have been aware of potential grooming behavior; however, Mr. Dragan fails to mention that Mr. Austin also specifically told the police he never observed this behavior in front of any students. Moreover, Mr. Austin's comments about female teachers calling Phillips "creepy" is clearly hearsay, as none of the female teachers who were deposed in this matter offered such testimony. Thus this entire portion of Mr. Dragan's proposed testimony should be precluded, as it is 1) based upon at the least an incomplete and misleading characterization of the police interview, with no mention or reference to Mr. Austin's sworn testimony in this matter; and 2) based on inadmissible hearsay.

10. Also in paragraph 1, Mr. Dragan notes that "school employees were also aware of Phillips having parts on his boat an inviting students…" See Exhibit "A," p. 45. Mr. Dragan offers this opinion in plural, as in multiple school employees had this awareness; and further fails to put this opinion in the context with which it was offered. Specifically, the only employee who offered

such testimony, and the only employee who testified, despite being so asked, as to this statement was Susan Gregory. Her specific testimony was that "in the early years of [Phillips] employment at Conestoga…" she heard "rumors" that students went on Phillips boat. She testified that she learned this from unidentified students that she confronted Phillips, and **that that behavior stopped**. See the deposition testimony of Susan Gregory, attached hereto as Exhibit "B," 49:7-52:24. Mr. Dragan's characterization, therefore, of multiple employees allegedly having information that Phillips took students on his boat is false, and he fails to appropriately report or opine on the entirety of such testimony, rendering it misleading and inappropriate.

11. In paragraph 3 of this section, Mr. Dragan offers the opinion:

> The evidence shows that not only was D.B. not a student of Phillips, but that she received no educational benefit during her time with him due to the widely known and inordinate amount of time she spent in the TV studio with Phillips and not in her assigned class. **This is despite the fact that it was very obvious to staff and students that their relationship was unusually and suspiciously close and inappropriate.**

See Exhibit "A," p. 46 (emphasis added).

This paragraph, particularly the section that is bolded above, is completely misleading and based on no evidence or facts in this case. Mr. Dragan contends that Mr. Austin stated in his interview that he saw her Plaintiff hanging around the studio, in the halls, and eating lunch with Phillips. However, Mr. Austin also indicated in the same interview that he saw her with other students, not alone with Phillips. Indeed, Plaintiff's own testimony, which is not cited by Mr. Dragan, indicates she spent time in the studio with her friend, E.H. In the same paragraph, Mr. Dragan refers to a statement of Ms. Raffaele during her police interview that she allegedly had a conversation with Mr. Azar, but fails to cite to Mr. Azar's testimony wherein he denied such conversations. He also fails to accurately cite to the statement of Ms. Raffaele to the police, which

was that her concern was not that Phillips was behaving inappropriately, but that Plaintiff was acting very needy and immaturely around Phillips. In that Mr. Dragan fails to accurately cite to such statements or testimony, he should be precluded from offering any opinion as to such testimony.

12. Similarly, in the same paragraph, Mr. Dragan contends that Ms. McGregor recalled "overhearing D.B. being referred to by other students as 'Art's girlfriend' but admitted that she received no training at the District that would have put her on notice to report this and did not report it." See Exhibit "A," p. 47. This is blatantly not true; Ms. McGregor actually testified that she heard a student mention "Art's girlfriend," but that she did not know that the student was discussing Plaintiff, did not know who the student was discussing, and in fact does not know which student made such a comment. See the deposition transcript of Jane McGregor, attached hereto as Exhibit "C," 114:6-18. Such a comment is clearly inadmissible hearsay, and, as indicated, did not even pertain to the Plaintiff. She further testified that she took the comment, made by an unidentified student as an "offhanded joke." Id. No timing is referenced as to when such a comment was even overheard; thus any reference to said comment is clearly not admissible, and cannot serve as the basis for any opinion of Mr. Dragan.

13. In paragraph 5 of Mr. Dragan's conclusions, he opines:

> Staff and students were aware that Phillips would take D.B. off school grounds in his personal vehicle, including Ms. Raffaele who would give them her food order before they left and student C.C. who was aware that Phillips took D.B. to get Wawa and Rita's on different occasions. There was a security guard at the School who specifically gave permission for D.B and Emily to go with Phillips in his car to get ice cream and stated that she did not care as long as no one got hurt.

See Exhibit "A," p. 48.

Not a single staff member testified that they were aware that Phillips took Plaintiff off of campus during the school day, including Piera Raffaele who specifically denied having any knowledge that Phillips would take Plaintiff to Wawa. The "basis" for this proposed testimony is purely inadmissible hearsay, as noted by the exhibits to which Mr. Dragan refers for his support for this contention (notes pertaining to an interview with a student, C.C., which is the subject of another motion *in limine*, and a handwritten note from the Plaintiff herself months after these alleged incidents reporting a conversation with Ms. Raffaele which is also hearsay). There is absolutely no admissible testimony to support that any staff member was aware that Phillips took Plaintiff off of campus during the lunch period; and any testimony on the part of Mr. Dragan is clearly inappropriate and must be precluded.

14. Mr. Dragan additionally opines that Plaintiff was "excessively absent" from her assigned classes and "continued to be seen and interacting in an inappropriate manner with Phillips." See Exhibit "A," p. 49. He also notes that "teachers testified that they were aware, based on the hall passes they received, that D.B. was absent from their class and that, during that time, she was with Phillips." Id. at 37.

Plaintiff's alleged absences are the subject of a separate motion *in limine*; however, there is no evidentiary basis or testimonial basis for Mr. Dragan's opinion that any staff member or employee of TESD 1) knew that Plaintiff was skipping class to spend time with Phillips, or 2) that Plaintiff "was seen" interacting inappropriately with Phillips by any employee or staff member. To the contrary, the consistent testimony of each and every employee of the District was that no one ever observed the two alone together. Thus this proposed testimony is inappropriate, misleading, and not based on any facts or evidence in this case. With respect to the specific

5

testimony to which Mr. Dragan "cites," neither teacher testified as to anything remotely consistent with his opinion.[1]

15. In paragraph 10, Mr. Dragan notes that Ms. Talian did not report "chronic absences" or "late assignments," nor did she offer any assistance to Plaintiff or discipline her in any manner. See Exhibit "A," p. 10.

Mr. Dragan makes this comment despite identifying that he reviewed the sworn testimony of Ms. Talian in preparation for his report. His proposed opinion blatantly chooses to ignore the testimony of Ms. Talian, who explained in detail her attempts to talk to Plaintiff and her discipline of Plaintiff. Such proposed testimony of Mr. Dragan is clearly misleading, prejudicial, and based on an incomplete or biased presentation of the evidence of this matter, which is inappropriate. Such opinion must be precluded as it has no basis in fact or evidence.

16. In paragraph 8, Mr. Dragan proposes to offer the following testimony:

> There is concerning evidence that on March 10, 2017, Department Chair Austin may have witnessed an incident of Phillips inappropriately physically holding D.B. so a male student could put snow down her back. (Exhibit Austin-3; Defendants No. 07237-38). Based on Phillips' e-mail to himself regarding the incident, he was worried that he might be in trouble due to Mr. Austin's observation of the incident. Mr. Austin denied being aware of this incident and indicated that he would have taken action to report such an incident to the administration. (Austin: 31, 49-50); however, based on Mr. Austin's failure to report other inappropriate conduct, and the fact that Phillips was concerned enough to worry about the incident, there is a **strong possibility that Mr. Austin observed but failed to report this.**

See Exhibit "A," p. 49. (Emphasis added).

---

[1] To the contrary, Ms. Wagner testified Plaintiff was late to her class on a single occasion and had a pass signed by Mr. Phillips; Ms. Talian did not offer testimony that Plaintiff was "frequently absent and receiving hall passes from Phillips," and indicated that she did, in fact, look into the alleged absences from class and determined the majority of times were when Plaintiff was physically not in school.

6

This opinion is completely inappropriate. Not only is the "evidence" to which Mr. Dragan refers an unauthenticated, unexplained email that does not mention "Mr. Austin" but rather an individual identified as "Noah,"[2] but Mr. Dragan specifically ignores not only the testimony of Mr. Austin, but the statement Mr. Austin gave the police, and instead hypothesizes and proposes to testify before the jury that Noah Austin is lying. Such testimony by an alleged expert is completely improper, prejudicial, offers no probative value, and seeks to make credibility determinations that are solely within the province of the jury. Therefore, such testimony must be precluded.

17. Other examples of Mr. Dragan's proposed testimony that are either based on inadmissible hearsay, or a deliberately piecemeal citation to testimony or evidence include:

- An opinion that Piera Raffaele was not trained to recognize "precursor misconduct" despite her testimony during her deposition of October 10, 2018 where she listed specific examples of precursor misconduct and detailed that she understood what to report. (See Exhibit "A," pp. 24-25);

- Reference to an email from a parent, as support that Dr. Gusick acknowledged the District's policies were deficient, when in fact, the email from Dr. Gusick noted that the District is always working to strengthen policies, and gave several examples thereof.[3] (See Exhibit "A," pp. 26-27);

---

[2] This email, as well as other documents from Phillips computer is the subject of another motion *in limine* pending before this Honorable Court.

[3] The response reads:
"Thank you for your response to the letter we sent out Friday, and I deeply regret the circumstances that led to it. I appreciate and share your concern for our students. We agree that our related policies and practices must remain under review to achieve the learning environment we all seek and expect. This work is ongoing. For example, since last year we modified our expectation for locker room supervision, strengthened our policy regarding appropriate boundaries

7

- Comment that Dr. Dunleavy, the school counselor, did not know the meaning of precursor misconduct, when in fact her testimony does not support that contention. (See Exhibit "A," p. 35).

18. This proposed testimony of Mr. Dragan is clearly improper, and should be precluded at the time of trial.

**Legal Argument**

19. Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testified in the form of an opinion or otherwise if:

(a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702.

20. It is submitted that the proposed testimony of Mr. Dragan, is not based upon sufficient facts and data, and therefore will not help the trier of fact to understand the evidence in this matter.

---

with students, and worked directly with staff members regarding expectations. We recognize this work is never done, and we need to continue to review and enhance our policies and practices as necessary, and I thank you for your questions and feedback as we work in that direction."

21. Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

F.R.E. 703.

22. As the opinions and conclusions of Mr. Dragan are based upon evidence which constitutes inadmissible hearsay, it is respectfully submitted that he should be precluded from offering such opinions before the jury.

23. Federal Rule of Evidence 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

F.R.E. 403.

24. Even if this Honorable Court finds that any of the above opinions of Mr. Dragan could possibly be admissible under Rules 702 and 703, it is submitted that any such probative value is substantially outweighed not only by the prejudicial effect of such unsubstantiated testimony, but by the very real danger that such testimony will serve only to mislead the jury.

WHEREFORE, Defendants, Tredyffrin Easttown School District and Amy A. Meisinger, respectfully request that this Honorable Court enter the attached Order, precluding the misleading and inappropriate testimony of Plaintiff's expert, Edward F. Dragan, Ed.D.

Respectfully Submitted,

CONNOR, WEBER & OBERLIES

BY: _____
JOSEPH P. CONNOR, III, ESQUIRE
JULIA M. JACOBELLI, ESQUIRE
171 West Lancaster Avenue
Paoli, PA 19301
(610) 640-2800 - phone
(610) 640-1520 – fax
jconnor@cwolaw.com
jjacobelli@cwolaw.com
Attorneys for Defendants,
Tredyffrin Easttown School District
and Amy A. Meisinger

Dated: March 16, 2021